Moss, Judge,
delivered the opinion of the court:
On August 19,1918, Harry P. Worth, doing business under the name of H. P. Worth Co., entered'into a contract .with the Government for the manufacture and delivery to the War Department of 80,000 axe handles. By the terms of the contract the handles were to be delivered in specified weekly quantities, the whole contract to be completed by February 15, 1919.
During the period involved in the transaction under consideration the said Harry P. Worth was the controlling *360 owner of a concern known as the Chapman, Porter & Woel-fling Co., Inc., which was in severe financial difficulties. As the result of a proposal made by Worth and accepted by the creditors of the Chapman, Porter & Woelfiing Co., Inc., a new. corporation was organized on October 15, 1918, and on October 18, 1918, said Harry P. Worth in accordance with the plan and agreement previously made, and in return for certain shares of stock in the new H. P. Worth Co., Inc., transferred to said new company all his assets, and the assets of the business of the H. P. Worth Co., “ including the good will thereof, stock in trade and accounts receivable, contracts, factory at East Lyme, Conn. * *
The new corporation, H. P. Worth Co., Inc., made certain preparations for the performance of the contract with the Government and proceeded with the business of the old concern.
However, no deliveries whatever were made under the contract, and on November 21,1918, the contractor was notified to suspend operations. At the time of the cancellation of the contract the contractor had on hand 500 handles which corresponded to the specifications of the contract.
It is alleged in the petition that on account of the action of the Government in canceling said contract the H. P. Worth Co., Inc., was compelled to cease business, and in December, 1919, was forced into involuntary bankruptcy and thereby sustained a loss in money expended for work, labor, machinery, and raw materials, together with loss in profits, earned and prospective, in the total sum of $19,302.15,. for wh,ich judgment is asked.
The plaintiff, Samuel Doblin, acquired the claim, which is the subject of this action, by purchase under a sale by the bankruptcy court of the property, claims, causes of action, and equities belonging to or due and owing said H. P-. Worth Co., Inc.
The notice to suspend operations under the contract was in the form of a telegram which reads as follows: “ Suspend production on contract for handles number H C dash three seven eight dash B period send promptly statement present status of contract as outlined in circulars one eleven one twelve one fourteen mailed you to-day.”
*361 Under- this instruction the operations were immediately closed, and on November 26, 1918, the “H. P. Worth Company ” sent a sworn statement of claim to the defendant, to which défendant replied, requesting that a certain formal questionnaire theretofore furnished the contractor be filled out. Sa.id questionnaire was accordingly filled out and returned by the contractor on January 16, 1919. It purported to set forth the items of loss, representing the damage caused by the cancellation of the contract, to be $11,302.15. This statement was sworn to by Harry P. Worth,, jr., as “ proprietor ” of the H. P. Worth Co.
Frequent requests by the defendant were thereafter made to' have the contractor attend a conference in Boston for the purpose of considering and determining the contractor’s claim, to which apparently no attention was given; and on May 20, 1919, four months later, the defendant -telegraphed the contractor as follows: “ If representative of your company not here this week matter will be referred to the Department of Justice.” In response to this telegram Philip Doblin, secretary and manager of the H. P. Worth Co., Inc., went to Boston and had a conference with Captain Barlow and Captain Stark, representatives of the Government, at the conclusion of which he signed and swore to a statement which in substance and effect amounted to a disclaimer of the correctness of the several items contained in t]je original statement of cla.ims. The contention of Philip Doblin that this sworn statement was procured by duress is not sustained by the evidence. It is further contended by Doblin that he had no authority to execute the instrument in question, or to negotiate relative thereto. His actions, however, in that respect as an officer of the company, are important as reflecting his own convictions as to the mer.it of the claim.
The claim itself is almost wholly without merit. The contract was made on the 19th day of August, 1918. Deliveries, were to be made in specified weekly quantities, and the contract was to be completed on'February 15,1919. On November 14, 1918, after the expiration of half the entire contract period, not a single axe handle had been delivered, and in response to an inquiry of that date as to the cause of delay the contractor informed the Government, in substance, that *362 the installation of the new steam engine had not been effected, and that when completed progress would be greatly-assisted. At this time 32,000 of the 80,000 handles should already have been manufactured and delivered.
It is not satisfactorily shown that plaintiff company would have earned any profits if it had been permitted to complete the contract. On the contrary, the record tends to show that there would have been a loss instead of profits.
The defendant -is under no obligation, by reason of the cancellation of the contract, to reimburse the contractor for loss on account of the purchase of special facilities as claimed herein.
Aside, however, from the question of the validity or the -■ justice of the claim for damages herein, the assignment of the contract by H. P. Worth doing business as H. P. Worth Company, to the H. P. Worth Co., Inc., was in violation of the provisions of'the Eevised Statutes, section 3737, and the subsequent sale and transfer of same to the plaintiff, Samuel Doblin, conveyed no valid claim against the Government growing out of the cancellation of the contract, and there can be no recovery in th,is court. It should be mentioned that the contract itself expressly provided that there should be no assignment of same, either in whole or in part. Plaintiff’s contention that the defendant acquiesced in said assignment <js not sustained by the evidence. It is the judgment of the court that the plaintiff’s petition should be dismissed. And it is so ordered.
GRAham, Judge; Booth, Judge; and Campbell, Gliie; Justice, concur.